UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| HAROLD RUNNING BIRD,<br><br>          Plaintiff,<br><br><br>          vs.<br><br><br>TAMMY MERTENS-JONES, in her individual and official capacity as Administrative Remedy coordinator; DANIEL SULLIVAN, in his individual and official capacity as Warden of the South Dakota State Penitentiary; and DOUGLAS CLARK, in his individual and official capacity as Secretary of the South Dakota Department of Corrections;<br><br>          Defendants. | 4:21-CV-04197-KES<br><br><br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT, DENYING MOTION FOR PROTECTIVE ORDER, AND GRANTING MOTION TO EXTEND THE SCHEDULING ORDER |

Plaintiff, Harold Running Bird, a member of the Native American Church and an inmate at the South Dakota State Penitentiary, filed a civil rights lawsuit under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and 42 U.S.C. § 1983. Docket 14. He brings claims for violations of RLUIPA, his First Amendment right to free exercise of religion, and his Fourteenth Amendment rights to substantive due process and equal protection.[1] *Id.* He sues all defendants in their individual and official capacities,

---

[1] In his initial complaint, Running Bird also brought a claim for a violation of procedural due process. Docket 1 ¶ 35. In its 1915A screening order, the court dismissed this claim without prejudice. Docket 6 at 6. In his second amended

and he seeks a declaration "that the actions, decisions, policies and/or regulations of Defendants, so far as they prohibit [him] and other similarly situated Native American inmates of the [state penitentiary] from fully participating in family pow wows, sweats, and other religious ceremonies, violate RLUIPA, the First Amendment, and the Fourteenth Amendment[.]" *Id.* at 6. He asks the court to "[t]emporarily and permanently enjoin[] Defendants from continuing" with such illegal actions. *Id.*

Through counsel, defendants informed Running Bird that they intended to file a motion for summary judgment and a motion for stay of discovery based on qualified immunity. Docket 18 at 1. The parties attempted to reach a stipulation to amend the court's scheduling order, but they were unable to come to an agreement. *Id.* at 1-2. Running Bird then moved to extend the scheduling order, and defendants moved for a protective order to stay discovery pending resolution of the qualified immunity issue raised in their then-forthcoming motion for summary judgment. Dockets 18, 19. Running Bird opposes the motion for a protective order. Docket 21. Defendants then moved for summary judgment, which Running Bird opposes. Dockets 22, 32. All three motions are pending before the court.

## FACTUAL BACKGROUND

Running Bird alleges that defendants have imposed a substantial burden on his religious exercise "by providing an inadequate space for family pow

---

complaint, Running Bird does not reallege a procedural due process violation. *See* Docket 14 ¶ 36.

wows." Docket 14 ¶ 24. Specifically, he alleges that the room in which the family pow wows are hosted is "too small to allow for all of the families to join and restricts the ability of the participants to dance[,]" while other religious groups are allowed "to have religious ceremonies in larger spaces," such as the gym or recreation yard. *Id.* ¶¶ 12-13, 36.

On June 26, 2020, Running Bird submitted a Project Application in which he requested that Native Americans be allowed to have 3-day pow wows in the recreation yard, with family and other guests allowed to attend. Docket 23-1. According to Running Bird, pow wows like this used to be allowed, and other religious organizations are currently allowed to have gatherings like this. *Id.* He explained that this kind of pow wow would "give relatives more chance[s] to sing, dance, eat, [and] visit" with one another. *Id.* His application was denied on August 27, 2020, by then-Unit Manager/Cultural Activities Coordinator Tammy Mertens-Jones and then-Associate Warden, whose signature appears to be that of Jennifer Dreiske. *Id.* No explanation for the denial was provided, only a comment that the "pow wows will continue in the REC [building] or visit room in the current time allowed." *Id.*

On June 17, 2021, Running Bird filed an Informal Resolution Request again requesting that the facility allow for pow wows in the gym or outside because the visit room is "a small space" that "cannot hold very many [people] at all." Docket 4-1 at 4. He claimed that "many cannot come to dance or sing and also feast with others because of" limitations on the number of people in the visit room at one time. *Id.* The Department of Corrections denied this

request on June 25, 2021, saying that "it has been determined [t]hat this has been resolved on a separate informal request." *Id.* at 3. In a handwritten note on this denial, Running Bird noted that "nothing has been resolved, last week we were packed in the visit room so small the dancers couldn't sit down[.] Many sat on the floor to eat." *Id.*

On June 27, 2021, Running Bird filed a Request for Administrative Remedy, reiterating that nothing had been resolved and that they were "still denied family pow wow[s] in the gym or recreation yard," despite other religious groups using those spaces for religious activities. *Id.* at 2. He described the current space for pow wows as providing only a "small 6x10 area to dance[,] packing families [and] kids in [ ] like sardines." *Id.* The Department of Corrections denied this request on July 1, 2021, because Running Bird "made no clear request." *Id.* at 1.

Running Bird also claims that his free exercise of religion is substantially burdened by the prison's failure to ensure that religious ceremonies, such as sweats, are safe for all participants. Docket 14 ¶ 24. He alleges that by "mixing certain groups together," such as gang members and their victims, the ceremonies are "not safe" and are a "dangerous situation." *Id.* ¶¶ 17, 19.

On March 18, 2021, Running Bird, who has never been housed in West Hall, submitted a Project Application for "separate ceremonies for West Hall [protective custody] and other [Native American] individual[s] that cannot interact with gangs." Docket 23-2; Docket 28 ¶ 120; Docket 31 ¶ 120. He claimed that Mertens-Jones "let[s] gangs run 1 pipes, 1 [Native American]

4

Church, 1 ties, so none of West hall will go to, to pray." Docket 23-2. Running Bird also asserted that the involvement of sundancers, like himself, could help in alleviating the safety concerns at these ceremonies. *See id.* Mertens-Jones and then-Associate Warden Dreiske denied this application on May 19, 2021. *Id.*

On June 27, 2021, Running Bird submitted a Request for Administrative Remedy, in which he again asked for separate ceremonies for pipe ceremonies, sweats, Native American Church, and tobacco ties. Docket 4-2 at 2. He again claimed that some West Hall inmates do not attend the ceremonies because of threats of violence, and he stated that having everyone in a single ceremony "create[s] animosities [and] anger during the ceremonies." *Id.* The Department of Corrections denied this request on July 1, 2021, writing that Running Bird "made no clear request and raise[d] too many issues." *Id.* at 1.

## LEGAL STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must inform the court of the basis for its motion and identify the portions of the record that show there is no

genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. *Anderson*, 477 U.S. at 248. When considering a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

## I. Running Bird Has Standing to Pursue His Claims Related to the Family Pow Wows and the Sweat Ceremonies

### A. Legal Standard

The court must first address defendants' argument that Running Bird does not have standing. *Bernbeck v. Gale*, 829 F.3d 643, 646 (8th Cir. 2016) ("Standing . . . is a 'jurisdictional prerequisite' and thus a 'threshold issue that we are obligated to scrutinize[.]' " (quoting *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 770 & n.2 (8th Cir. 2010))). Standing has three elements: (1)

"the plaintiff must have suffered an injury in fact . . . [that] is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) "the injury has to be fairly traceable to the challenged action of the defendant;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up). A concrete injury is one that "actually exist[s]." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 340 (2016). It must be "real, and not abstract," but "intangible injuries can nevertheless be concrete." *Id.* (internal quotations omitted). "[P]articularized . . . mean[s] that the injury must affect the plaintiff in a personal and individual way." *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012) (quoting *Lujan*, 504 U.S. at 560 n.1).

"The party invoking federal jurisdiction bears the burden of establishing these elements[,]" and he must do so "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Thus, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," whereas "[i]n response to a summary judgement motion . . . the plaintiff can no longer rest on 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken as true." *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)).

## B. The Assertions in Running Bird's Affidavit Sufficiently Establish Concrete, Particularized Injuries That Are Actual or Imminent

Here, defendants challenge only the first prong of standing. They argue that Running Bird has not shown that he is injured by the allegedly too-small space for family pow wows because he does not claim that the small space ever prevented him from attending the pow wows or from having his invited guests attend the pow wows. Docket 23 at 28-30. Defendants also argue that Running Bird has not been injured by the decision to not hold separate sweats because he has never been housed in West Hall and is thus not one of the West Hall inmates allegedly not attending the sweats due to safety concerns. *Id.* at 51-53.

In response to defendants' motion for summary judgment, Running Bird submitted an affidavit in which he sets forth additional details regarding how the room used for family pow wows and the combined sweat ceremonies affect his exercise of religion. He asserts that "Wacipi ceremonies ('pow wows') consist of a number of activities including the performance of ceremonial dances[,]" and "[t]he ceremonial dances and regalia are an integral part of the pow wow and of the practice of [his] religion." Docket 32-1 ¶¶ 7-8. He also asserts that "[t]he regalia worn for dances consist of fragile beads, feathers, and other items and can take up a large amount of space[,]" and "[w]hen the dancers do not have adequate space to perform and wear their regalia [in] the dances as they are meant to be performed, [it] hinders [his] ability to practice [his] religion." *Id.* ¶¶ 8-9. Additionally, he states that "[t]he visit room where the family pow wows are held is small, . . . restricting the ability of the dancers to perform the ceremonial dances," and that this room "does not provide enough space for the

8

dancers to wear their full regalia without fear of the feathers being crushed or beadwork being damaged." *Id.* ¶ 10.

In this affidavit, Running Bird also states that "Inipi ceremonies ('sweats') are a sacred communion and reconnection to The Creator in [his] religion[,]" and that he "regularly attend[s] sweats . . . because they are a pinnacle of [his] religion." *Id.* ¶¶ 3-4. He claims that "[g]ang members are permitted to attend the same sweat ceremonies as inmates who are targeted or bullied by the gangs[,]" and that "[t]his creates an unsafe situation in the sweat ceremony and I fear for my safety during the ceremony." *Id.* ¶¶ 5-6.

Running Bird's claim that the small room has hindered his ability to practice his religion through the family pow wows and that the lack of separate ceremonies has made him fear for his safety during sacred sweat ceremonies qualify as concrete injuries. *See Spirit Lake Tribe of Indians ex rel. Comm. of Understanding & Respect v. NCAA*, 715 F.3d 1089, 1092 (8th Cir. 2013) ("Emotional harm can be sufficiently concrete and particularized to confer standing."); *Red River Freethinkers*, 679 F.3d at 1024 ("To the extent that emotional harms differ from other, more readily quantifiable harms, that difference lacks expression in Article III's case-or-controversy requirement."). Defendants emphasize that Running Bird regularly attends family pow wows and sweat ceremonies and he has not been physically injured, but emotional or spiritual harms do not have to alter one's behavior to confer standing. *Red River Freethinkers*, 679 F.3d at 1023 (holding plaintiffs alleged concrete harm where they did not alter their behavior but "suffered feelings of exclusion,

9

discomfort, and anger" from display of Ten Commandments monument on city property).

Running Bird's alleged injuries are also particularized. Although Running Bird includes in his affidavit an assertion that the small room size affects the ability of other individuals to attend the family pow wows and that other inmates are at risk during the sweats, he also asserts that these things have hindered his own ability to practice his religion. Docket 32-1 ¶¶ 5-6, 10. Thus, the room size and the lack of separate sweat ceremonies affect him in a personal and individualized way. *Red River Freethinkers*, 679 F.3d at 1023. And Running Bird is not alleging that he may experience these harms at some uncertain time in the future, but rather that he has been and continues to be harmed by the small room size and combined sweat ceremonies, thus satisfying the "actual or imminent" requirement. Thus, the specific facts Running Bird sets forth in his affidavit, which the court must accept as true, establish that he has suffered an injury in fact, one that is both concrete and particularized and actual or imminent. *Lujan*, 504 U.S. at 560-61. As the various requests from Running Bird and denials from the Department of Corrections show, defendants' actions and policies have caused the alleged injuries, and an order enjoining defendants from continuing these actions and policies would redresses the injuries, thus satisfying the causation and redressability prongs of the standing analysis. *See id.*

10

## II.      Defendants Forfeited Their Reliance on § 1997e(a)

In their reply brief, defendants argue for the first time that Running Bird has failed to exhaust administrative remedies on any claims related to the location of the family pow wows. Docket 35 at 8-11. The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

This does not make administrative exhaustion a jurisdictional requirement, however; it is an affirmative defense. *Jones v. Beck*, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA."); *Lenz v. Wade*, 490 F.3d 991, 993 n.2 (8th Cir. 2007) ("Under the [PLRA], failure to exhaust the available administrative remedies is an affirmative defense, not a matter of subject matter jurisdiction."); *Chelette v. Harris*, 229 F.3d 684, 687-88 (8th Cir. 2000) (concluding that administrative exhaustion is not jurisdictional and collecting cases from other circuits holding the same). When properly invoked, a court does not have the discretion to ignore the defense for reasons of docket management or any other reason. *Perez v. Wisc. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999); *Chelette*, 229 F.3d at 688 (citing this holding from *Perez* favorably). But like other affirmative defenses, defendants can "waive or forfeit their reliance on § 1997e(a)[.]" *Perez*, 182 F.3d at 536.

Defendants claim that in the grievances Running Bird filed there was "no mention whatsoever of dancers not having enough room to perform their ceremonial dances." Docket 35 at 9 (internal quotation omitted). Thus, they argue this claim was not properly exhausted, and to allow Running Bird to proceed with an allegation that was first made in his response to their motion for summary judgment would be akin to allowing him to improperly amend his complaint. *Id.* at 9-11.

But in his second amended complaint, Running Bird alleged that "Informal Resolution Request 36674 explains that the room in which the family pow wows are currently hosted is too small to allow for all of the families to join and *restricts the ability of the participants to dance.*" Docket 14 ¶ 12 (emphasis added). Although defendants admitted in their Answer that Running Bird did complain in Request 36674 that "the room in which the family pow wows are currently hosted is too small for all of the families to join[,]" they failed to specifically admit or deny Running Bird's claim that he also complained in Request 36674 that the small room "restrict[ed] the ability of the participants to dance." *Id.* ¶ 12; Docket 15 ¶ 11.

From Running Bird's second amended complaint, then, defendants knew Running Bird was alleging that the room size restricted the ability to dance during the pow wow in his prior grievances.[2] Despite this allegation,

_____

[2] It was also clear to the court in its screening order on Running Bird's initial complaint that he was alleging the room was too small for participants to dance and that his attempts to address this issue through the grievance process were not successful. *See* Docket 6 at 1-2 ("[Running Bird] . . . alleges that family pow

defendants did not plead in their Answer that such a claim was barred for failure to exhaust. Defendants did allege that Running Bird's claims were "barred in whole or in part by the provisions of 42 U.S.C. § 1997e[,]" but they did not specify whether they believed his claims were barred under §1997e(a) for failure to exhaust his administrative remedies, or for reasons covered by another subsection of § 1997e. *See* 42 U.S.C. § 1997e(c) (directing courts to dismiss on its own motion or a party's motion any action that "is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief").

Even assuming defendants properly pleaded failure to exhaust as an affirmative defense in their Answer, they make no reference to this defense in their motion for summary judgment or in their brief in support of their motion. *See* Dockets 22, 23. It is not until their reply brief that defendants make this argument. Docket 35 at 8-11. Defendants claim they "could not, in their summary judgment motion . . . present facts or argument to counter [Running Bird's] argument that the dancers do not have room to fully perform their ceremonial dances" because Running Bird did not advance such a theory until his response brief. *Id.* at 8. But, as described above, Running Bird made this claim in his second amended complaint. And although he added additional details in his responsive affidavit about how the lack of space affects ceremonial regalia, this was not akin to raising a new claim, as defendants

---

wows are held in a space too small . . . for participants to dance. He also alleges that he attempted to address this through the grievance process . . . .").

argue, but the same claim he has made all along: that the size of the room used for family pow wows "restricts the ability of the participants to dance." Docket 14 ¶ 12.

Because defendants did not raise the failure-to-exhaust argument until their reply brief, Running Bird has not had an opportunity to respond. *See Barham v. Reliance Standard Life Ins. Co.*, 441 F.3d 581 584 (8th Cir. 2006) ("As a general rule, we will not consider arguments raised for the first time in a reply brief."); *Winterboer v. Edgewood Sioux Falls Senior Living, LLC*, 12-CV-4049-KES, 2014 WL 28863, at *4 n.1 (D.S.D. Jan. 2, 2014) ("Arguments raised for the first time in reply briefs should not be considered because the opposing party has had no opportunity respond."). The lack of an opportunity to respond is particularly problematic here where exhaustion is measured against the prison's specific procedural rules and where "[t]he level of detail necessary . . . will vary from system to system and claim to claim[.]"[3] *King v. Iowa Dep't of Corr.*, 598 F.3d 1051, 1054 (8th Cir. 2010) (quoting *Jones*, 549 U.S. at 218). Thus, the court concludes that defendants have forfeited their

---

[3] Defendants have also failed to provide the court with the Department of Corrections policies it would need to review before the court could conclude that Running Bird failed to exhaust his administrative remedies. For example, defendants argue that Running Bird failed to exhaust because he did not comply with South Dakota Department of Corrections Policy 1.3.E.2, Administrative Remedy for Inmates, in his grievances related to the space used for family pow wows. Docket 35 at 9-10. Despite quoting from this Policy, defendants did not include the full policy in any of their exhibits or in their Statement of Undisputed Material Facts submitted with their motion for summary judgment or in any attachments to their reply brief. *See* Dockets 23, 24, 25, 26, 27, 28, 35.

reliance on the failure-to-exhaust argument, and the court will not grant summary judgment on this basis.

### III.   Running Bird Has Not Demonstrated That Deferring Consideration of Defendants' Motion for Summary Judgment is Justified Under Rule 56(d)

Running Bird asks the court to either deny defendants' motion for summary judgment or defer consideration of it until he has had enough time to conduct discovery. Docket 32 at 4. Defendants argue that Running Bird has not made a sufficient showing for such relief under Rule 56(d). Docket 35 at 1-7.

"As a general rule, summary judgment is proper 'only after the nonmovant has had adequate time for discovery.' " *Toben v. Bridgestone Retail Ops., LLC*, 751 F.3d 888, 894 (8th Cir. 2014) (quoting *Hamilton v. Bangs, McCullen, Butler, Foye & Simmons*, *LLP*, 687 F.3d 1045, 1049 (8th Cir. 2012)). But "Rule 56 of the Federal Rules of Civil Procedure does not require trial courts to allow parties to conduct discovery before entering summary judgment." *Humphreys v. Roche Biomedical Lab'ys*, 990 F.2d 1078, 1081 (8th Cir. 1993) (citing *United States v. Light*, 766 F.2d 394, 397 (8th Cir. 1985)). Thus, "[t]o prevent a party from being unfairly thrown out of court by a premature motion for summary judgment[,]" Rule 56(d) allows a court to postpone ruling on the motion until the discovery can be conducted. *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999) (citing *Celotex*, 477 U.S. at 326). Rule 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition,

15

the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.[4]

The party requesting a delay under Rule 56(d) must "make a good faith showing that postponement of the ruling would enable it to discover additional evidence which might rebut the movant's showing of the absence of a genuine issue of material fact." *Johnson v. Moody*, 903 F.3d 766, 772 (8th Cir. 2018) (citing *Robinson v. Terex Corp.*, 439 F.3d 465, 467 (8th Cir. 2006)). This means that a party must show "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Id.* (quoting *Toben*, 751 F.3d at 895). "Where . . . a party fails to carry his burden under Rule 56[(d)], postponement of a ruling on a motion for summary judgment is unjustified." *Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975).

"In qualified immunity cases, the Rule 56[(d)] balancing is done with a thumb on the side of the scale weighing against discovery." *Dale v. Dooley*, No. 4:14-CV-04003-LLP, 2015 WL 224969, at *3 (D.S.D. Jan. 15, 2015) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998)). This is because "[t]he Supreme Court has repeatedly emphasized that qualified immunity is an immunity from suit that should be resolved 'at the earliest possible stage in litigation' to ensure that insubstantial damage claims against

---

[4] This provision was previously at Rule 56(f). Fed. R. Civ. P. 56 advisory committee notes to 2010 amendment ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).").

government officials are resolved 'prior to discovery.' " *Johnson*, 903 F.3d at 772 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009)).

Here, Running Bird submitted an affidavit in which he asserts that "the legal arguments asserted in Defendants' Motion for Summary Judgment . . . are based in large part on the facts presented in four affidavits . . . submitted concurrently with" their Motion; that he did not see those "[a]ffidavits prior to them being filed" and "ha[s] not had a chance to engage in discovery regarding the facts presented in the [a]ffidavits;" and that he "dispute[s] many of the facts presented in the [a]ffidavits and intend[s] to conduct discovery regarding these disputed facts." Docket 32-1 ¶¶ 14-16. These conclusory statements do not describe with any specificity what facts Running Bird hopes to elicit from further discovery. *See Dulany v. Carnahan*, 132 F.3d 1234, 1238 (8th Cir. 1997) (denying postponement where "plaintiffs . . . sought 'to discover critical facts,' but they did not articulate what particular critical facts they needed to develop or hoped to unveil[,]" even though plaintiffs identified many types of records they believed they were entitled to in discovery); *Willmar Poultry Co.*, 520 F.2d at 297 (denying postponement where plaintiffs submitted nearly identical affidavits that merely asserted they were "desirous of maintaining [their] discovery program of interrogatories, document inspection[,] and depositions, which shall be conducted in prompt and orderly fashion to elicit facts from the [defendants]"). Because of this lack of specificity, especially given the defendants' assertion of

17

qualified immunity on at least some of the claims,[5] Running Bird has not met the requirements of Rule 56(d), and the court will not defer ruling on the motion for summary judgment until he had had time to conduct discovery.

## IV.    Several of Running Bird's Claims Are Barred as a Matter of Law

Running Bird's second amended complaint states that the action is "for injunctive relief and damages pursuant to 42 U.S.C. § 1983[.]" Docket 14 ¶ 5. He brings each of his claims – RLUIPA, First Amendment, substantive due process, and equal protection – against all defendants. *See id.* at 4-6. He is suing all defendants in both their individual and official capacities. *Id.* at 1. Because he does not specify in which capacity each of his claims are brought, the court will presume he brings each claim against each defendant in both capacities.

### A. Running Bird's Claims for Money Damages Against Defendants in Their Official Capacities Are Not Allowed Under § 1983 or RLUIPA

Defendants move for summary judgment on Running Bird's claim for money damages against defendants in their official capacities because "[t]o the extent . . . that Running Bird seeks monetary damages against Defendants in their official capacit[ies] . . . [he] fails to state a claim upon which relief can be granted." Docket 23 at 2. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state

---

[5] Running Bird concedes that the qualified immunity issue "may not be premature for the Court's consideration at this time[.]" Docket 32 at 4.

itself. Although "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* The state of South Dakota has not waived its sovereign immunity for claims under RLUIPA or for any of Running Bird's other claims. *See Sossamon v. Texas*, 563 U.S. 277, 293 (2011) ("States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver."). Thus, defendants' motion for summary judgment on Running Bird's claims for money damages against defendants in their official capacities is granted.

### B. RLUIPA Does Not Allow for Claims for Money Damages Against Officials in Their Individual Capacities

Defendants argue that RLUIPA does not permit claims for money damages against officials in their individual capacities. Docket 23 at 12 n.1. "Although the Eighth Circuit has not yet decided the question, other Courts of Appeals have uniformly held that RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities." *Epp v. Frakes*, 2017 WL 2608694, at *6 (D. Neb. June 15, 2017) (collecting Courts of Appeals cases). This is because "the Spending Clause authority by which RLUIPA was enacted does not support an action against an official in his or her individual capacity." *Goulding v.*

*Kaemingk*, 4:14-CV-04151-KES, 2016 WL 6271425, at *14 (D.S.D. Sept. 23, 2016). Several district courts within the Eighth Circuit have held the same. *See Epp*, 2017 WL 2608694, at *6 (collecting district court cases). Defendants' motion for summary judgment is thus granted on Running Bird's RLUIPA claims for money damages against defendants in their individual capacities.

### C. Running Bird Cannot Obtain Injunctive Relief Against Defendants in Their Individual Capacities

The injunctive relief Running Bird is seeking—enjoining the implementation of allegedly unlawful decisions and policies at the prison— concerns authority that the defendants have only in their official capacities. Thus, "the only relief [Running Bird] can obtain from these defendants in their individual capacities is damages[,]" and not injunctive relief. *Hummel v. Minn. Dep't of Agric.*, 430 F. Supp. 3d 581, 593 (D. Minn. 2020); *see Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."); *Am. C. L. Union v. Tarek Ibn Ziyad Acad.*, 788 F. Supp. 2d 950, 959 (D. Minn. 2020) (allowing injunctive relief claims against defendants in their individual capacities because of "unique" circumstances where their actions were taken "both within and outside the scope of their official duties"). Defendants are thus granted summary judgement on any claims for injunctive relief against them in their individual capacities.

20

## V.      Clark and Sullivan Are Entitled to Summary Judgment on Running Bird's § 1983 Individual Capacity Claims

Clark and Sullivan assert that Running Bird's § 1983 individual capacity claims against them cannot survive summary judgment because they were not personally involved in any decisions related to rejecting Running Bird's request to hold the family pow wows in a larger space or to hold combined sweat ceremonies. Docket 23 at 4-8. In an individual capacity suit under § 1983, a plaintiff seeks to impose personal liability on a state actor for actions taken under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Only state actors whose personal conduct caused the deprivation of a federal right are liable under § 1983. *Pulaski Cnty. Republican Comm. v. Pulaski Cnty. Bd. of Election Comm'rs*, 956 F.2d 172, 174 (8th Cir.1992) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

Section "1983 liability requires personal involvement in or direct responsibility for actions resulting in [the] violation." *Carter v. Hassell*, 316 F. App'x 525, 525 (8th Cir. 2008) (citing *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir.1985)); *see also Marchant v. City of Little Rock*, 741 F.2d 201, 204 (8th Cir.1984) (dismissing a claim because the individual "had no knowledge or connection to" the alleged violation); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir.1993) (dismissing a § 1983 case where a prisoner claimed that prison officials inappropriately took away his rosary because "none of the prison officials sued by him [were] responsible for this confiscation"). Personal involvement includes " 'creating, applying, or interpreting a policy' that gives

21

rise to unconstitutional conditions." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (quoting *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009)).

Here, all the relevant decisions regarding Running Bird's requests were made on or before July 1, 2021. Docket 4-1 at 1, 3-4; Docket 4-2 at 1, 3-4. Sullivan became Warden of the penitentiary on or about December 13, 2021. Docket 24 ¶ 1. Thus, Sullivan was not the Warden at the time of the denials and Running Bird does not allege that Sullivan was personally involved in denying his requests. *See generally* Docket 14; Docket 32-1.

Clark was Deputy Secretary for the Department of Corrections from October 28, 2019, until July 15, 2021. Docket 25 ¶¶ 1-2. He later served as Acting Warden and Interim Secretary of Corrections, but he was not in either of these roles until after Running Bird's requests were all denied. *Id.* ¶¶ 1-3. The Eighth Circuit has held that the leader of a state Department of Corrections may satisfy the personal involvement requirement by virtue of his "authority . . . to make prison-wide policy decisions, . . . supervise the administration of all institutions, . . . and . . . to change the challenged policies." *Jackson*, 747 F.3d at 544 (internal quotation omitted). But Running Bird has not alleged that Clark, who was only the Deputy Secretary, had such unilateral authority, and "general supervisory authority over prison operations does not make him liable under § 1983." *Id.* at 545. Thus, for Clark, Running Bird must point to specific facts in the record that create a genuine dispute of material fact regarding whether Clark was "direct[ly] involve[d] . . . in the formation, implementation, or enforcement" of the decision to restrict family

pow wows to the visitor room or to hold combined sweat ceremonies. *Id.* He has failed to do so. Thus, Clark and Sullivan are entitled to summary judgment on Running Bird's § 1983 claims against them in their individual capacities.

## VI.   Running Bird's Remaining Claims for Injunctive Relief

Running Bird brings claims for injunctive relief against all defendants in their official capacities for violations of RLUIPA, the First Amendment right to free exercise, and the Fourteenth Amendment rights to equal protection and substantive due process. Docket 14.

### A. RLUIPA Claims

"Congress enacted RLUIPA to provide additional protection for institutionalized persons' religious freedom." *Singson v. Norris*, 553 F.3d 660, 662 (8th Cir. 2009) (citing RLUIPA, Pub. L. No. 106-274, 114 Stat. 803 (2000)). RLUIPA provides, in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). State prisons are covered under this provision. *Singson*, 553 F.3d at 662.

In RLUIPA, "Congress defined 'religious exercise' capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.' " *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (quoting 42 U.S.C. § 2000cc-5(7)(A)). Congress instructed that the definition of religious exercise

"shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by . . . the Constitution." *Id.* (citing 42 U.S.C. § 2000cc–3(g)).

Although the test for whether religious exercise is substantially burdened under RLUIPA is "largely consistent with" First Amendment cases, *Van Whye v. Reisch*, 581 F.3d 639, 656 (8th Cir. 2009), the protections afforded by each are not identical. For example, the test under the First Amendment generally requires a challenger to show "a government policy or action must significantly inhibit or constrain religious conduct or religious expression; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are *fundamental* to a person's religion." *Id.* (cleaned up) (emphasis added) (quoting *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 & n.7 (8th Cir. 2008)). But under RLUIPA, a court is not allowed to "inquir[e] into whether a particular belief or practice is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). The "availability of alternative means of practicing religion" is also not a "relevant consideration" under RLUIPA as it is when a prisoner brings a First Amendment claim. *Holt*, 574 U.S. at 361-62.

Once a prisoner has established that his religious exercise has been substantially burdened, then the burden shifts to prison officials to show that their decision or policy "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The governmental interest

24

must be more than a "broadly formulated interest;" RLUIPA requires a "more focused inquiry" that "scrutinizes the asserted harm of granting specific exemptions to particular religious claimants" and "the marginal interest in enforcing the challenged government action in that particular context." *Holt*, 574 U.S. at 363 (cleaned up). "The least-restrictive-means standard is exceptionally demanding." *Id.* at 364 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014)).

### 1. Family Pow Wows

In his affidavit, Running Bird asserts that the ceremonial dances, including the regalia the dancers wear during such dances, are an "integral" part of practicing his religion. Docket 32-1 ¶ 8. The regalia takes up a lot of space and consists of "fragile beads, feathers, and other items." *Id.* He also asserts that due to the limited space and dancers' "fear of the feathers being crushed or beadwork being damaged," "the dancers do not have adequate space to perform and wear their regalia . . . as they are meant to be performed," and that "this hinders [his] ability to practice [his] religion." *Id.* ¶¶ 9-10.

Defendants do not dispute any of these factual allegations. Instead, they largely reiterate their arguments related to standing: that Running Bird routinely attends the pow wows in the current space and that his invited guests have not been denied attendance at the pow wows. *See* Docket 23 at 20-30. Thus, according to defendants, any impact of the room size on the family pow wows is merely an inconvenience, not a substantial burden. *Id.* at 33-35.

Under defendants' definition of "substantial burden," then, if a prisoner is allowed to attend his chosen type of religious ceremony, his free exercise cannot be substantially burdened, regardless of restrictions the prison may put in place during that ceremony. But the definition of "religious exercise" under RLUIPA is not so narrow, and a plain reading of its text must bring the specific content of, and conduct during, such ceremonies within its definition. *See* 42 U.S.C. § 2000cc-5(7)(A) ("The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief"); *SapaNajin v. Gunter*, 857 F.2d 463, 464 (8th Cir. 1988) (rejecting argument that prisoner's complaints about hired medicine man's running of ceremonies were "minor" and affirming finding of First Amendment violation).

Running Bird explained that the dances are an important part of his religion, and he made specific factual allegations about how the size of the room affected those dances. Docket 32-1 ¶¶ 8-10. Thus, "[h]e did not rest on a conclusory allegation that his religious exercise was 'substantially burdened,' " but rather he provided "evidence from which such a conclusion could be drawn." *Van Wyhe*, 581 F.3d at 656 (denying summary judgment on RLUIPA claim where prison denied inmate's request for a succah, a three-sided tent or booth, to be used outside for religious observance). Construing the facts in the light most favorable to Running Bird as the non-moving party, there is a genuine dispute of material fact regarding whether the prison's refusal to hold the family pow wows in a larger room substantially burdened Running Bird's exercise of his religion.

26

Assuming Running Bird can show that the location of the family pow wows substantially burdened his free exercise, it would then be the defendants' burden to show that this restriction "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Defendants claim that once Running Bird makes the threshold showing of a substantial burden, the court must then apply the analysis from *Turner v. Safley*, 482 U.S. 78 (1987), to "determine whether the regulation is reasonably related to a legitimate penological interest." Docket 23 at 40-41 (quoting *Goulding*, 2016 WL 6271425, at *10). But a *Turner* analysis is done for First Amendment free exercise claims, not RLUIPA claims. *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 833 (8th Cir. 2009) ("If the prisoner fails to put forth sufficient evidence that his ability to practice his religion has been substantially burdened, then the court need not apply the *Turner* test to the Free Exercise claim and the strict scrutiny test to the RLUIPA claim."). The defendants' burden under RLUIPA is "heavier" than under a *Turner* analysis. *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004).

Defendants claim that restricting the family pow wows to the visitor room furthers the prison's interests in preventing the smuggling in and use of contraband and in maintaining security, especially for child visitors. *See, e.g.*, Docket 24 ¶¶ 24, 26. Courts have routinely recognized such interests as compelling. *See, e.g.*, *Holt*, 574 U.S. at 363 ("We readily agree that the Department [of Correction] has a compelling interest in staunching the flow of

27

contraband into and within its facilities[.]"); *Fowler v. Crawford*, 534 F.3d 931, 939 (8th Cir. 2008) ("A prison's interest in order and security is always compelling.").

For the "least restrictive means" prong of the analysis, defendants argue that the burden is on Running Bird to identify less restrictive means that the prison could employ. *See* Docket 23 at 48. For this proposition, defendants rely on *Hamilton v. Schriro*, 74 F.3d 1545, 1556 (8th Cir. 1996).[6] But in *Hamilton*, the prison, which had outlawed the construction and use of an opaquely covered structure for sweat lodge ceremonies, had considered at least three less restrictive means. 74 F.3d at 1555-56. Two of these—not using an axe during the ceremonies and having guards participate in the ceremonies—were offered by Hamilton, but rejected by prison officials for failing to adequately address their safety concerns. *Id.* at 1556. Prison officials offered a third option—removing the opaque covering—but Hamilton rejected this approach. *Id.* at 1555. This was an "unusual situation" where the prisoner's "own all-or-nothing position supports the prison officials' contention that an outright prohibition against a sweat lodge ceremony is the least restrictive means . . . ."

---

[6] Defendants also cite to a decision from the federal district court in Maryland for this proposition. Docket 23 at 48. According to defendants, the district court in Maryland held that a RLUIPA plaintiff "also bears the burden in [the least restrictive means] prong of the analysis." *Id.* (quoting *Redeemed Christian Church of God v. Prince George's Cnty.*, 485 F. Supp. 3d 594, 606 (D. Md. 2020)). But this passage of *Redeemed* was quoting a filing from the defendant; it was not the court's holding. 485 F. Supp. 3d at 606-07. And the court implicitly rejected this proposition when it ruled that the county violated RLUIPA. *Id.* at 608.

*Id.* at 1556.[7] Defendants correctly note that they do not have to "refute every conceivable option in order to satisfy the least restrictive means prong[,]" and "that prison administrators must be accorded due deference in creating regulations and policies directed at the maintenance of prison safety and security." *Id.* But it remains their burden at this stage to show that there is no genuine dispute of material fact that they have chosen the least restrictive means.

Here, only the affidavit from Mary Montoya, a religious volunteer who works closely with Native Americans at the prison, references any less restrictive means that may have been considered. *See* Docket 26 ¶¶ 1, 3. Montoya claims that allowing pow wows in the gym or recreation yard with adult visitors but not child visitors is not a viable option because she "is fairly certain" that the Native American Council of Tribes, which votes on the types of pow wows that will be held, would reject this option. *Id.* ¶ 69. She "believe[s]" this is because it is "extremely important to members of the [Council] to have children in attendance at such gatherings[,]" and that this is why the Council "has voted in the past to hold such events in the visit room[,]" where children are allowed. *Id.*

---

[7] Hamilton brought his claim under the Religious Freedom Restoration Act of 1993 (RFRA), 74 F.3d at 1547, which the Supreme Court later found to be unconstitutional as applied to states and localities. *Murphy*, 372 F.3d at 987 (citing *City of Boerne v. Flores*, 521 U.S. 507 (1997)). But the Eighth Circuit has held that the "strict scrutiny language" in RLUIPA should be applied "just as it was under RFRA." *Id.*

But Montoya's assertions cannot carry the defendants' burden for at least two reasons. First, these statements are purely speculative: she is "fairly certain" and "believe[s]" the Council would not accept a family pow without children, but as she admits, she does not "recall any discussions whatsoever about the possibility of holding a [three-day] family pow wow in the gym or recreation yard[.]" *Id.* ¶ 70. Thus, she has not established that she has personal knowledge relevant to this question. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Even if Montoya had participated in such discussions, it would be inappropriate for the court to rely on the defendants' judgment about the relative religious importance of the participation of different groups of people. *See Smith v. Perlman*, 658 F. App'x 606, 609 (2d Cir. 2016) ("For courts to credit a state's judgment about the observance requirements of various religious groups 'would necessarily lead [courts] down the unnavigable road of attempting to resolve . . . disputes over religious law and doctrine.' " (alterations in original) (quoting *Ford v. McGinnis*, 352 F.3d 582, 593 (2d Cir. 2003))).

Second, the right to free exercise under RLUIPA, as under the First Amendment, is an individual right. *See Holt*, 574 U.S. at 362 ("[T]he protection of RLUIPA, no less than the guarantee of the Free Exercise Clause, is not limited to beliefs which are shared by all members of a religious sect." (internal

quotation omitted)); *Patel*, 515 F.3d at 807 (defining substantial burdens on free exercise as those that "significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's *individual* religious beliefs . . . ." (emphasis added) (quoting *Murphy*, 372 F.3d at 988)). This does not mean that the religious practices of the Council or other groups are irrelevant to the least restrictive means analysis. *See Hamilton*, 74 F.3d at 1555 (considering testimony that "providing specific inmates with their own exclusive religious facility would appear to other inmates as an act of favoritism and would lead to resentment"). But defendants must come forward with evidence showing how the interplay between Running Bird's request and the practices of other inmates means that restricting all family pow wows to the visitor room is the least restrictive option.

Additionally, defendants' own evidence creates a genuine issue of material fact regarding whether the prison's interest in security requires all pow wows with outside visitors to take place in the visitor room, as they claim. Montoya admits that the so-called "inmate only" pow wows, which are held in the gym, sometimes include outside guests who go through additional screening procedures before they can attend. Docket 26 ¶¶ 63-64. Montoya also admits that other religious groups have three-day ceremonies in the gym or recreation yard, and that these gatherings "typically" do not include outside visitors, implying that sometimes they do. *Id.* ¶¶ 37, 40. Although defendants emphasize that these groups are smaller and have fewer ceremonies per year than Native American inmates, *see, e.g.*, *id.* ¶¶ 40-42, 73, defendants make no

31

attempt to explain why allowing smaller, less frequent family pow wows with enhanced screening procedures would not adequately address their security concerns. Indeed, none of the defendants assert, even in a conclusory manner, that their current policy is the least restrictive means for achieving a compelling interest. Instead, they merely claim that this policy is "reasonably" and "rationally" related to "legitimate" security and penological concerns. *See* Docket 24 ¶ 25; Docket 25 ¶ 28; Docket 27 ¶ 44. This is insufficient for meeting the "exceptionally demanding" least restrictive means standard. *Holt*, 574 U.S. at 364. Defendants' motion for summary judgment on this RLUIPA claim is thus denied.

### 2. Combined Sweat Ceremonies

In his affidavit, Running Bird asserts that these ceremonies "are a sacred communion and reconnection to The Creator in [his] religion[,]" and that he "regularly attend[s] sweats . . . because they are a pinnacle of [his] religion." Docket 32-1 ¶¶ 3-4. He claims that "[g]ang members are permitted to attend the same sweat ceremonies as inmates who are targeted or bullied by the gangs[,]" and this lack of separate ceremonies impacts him because it "creates an unsafe situation in the sweat ceremony and [he] fear[s] for [his] safety during the ceremony." *Id.* ¶¶ 5-6.

Defendants appear to misunderstand the nature of Running Bird's claim related to the combined sweat ceremonies. They argue that, because they were not aware of any violent incidents or threats related to such ceremonies, Running Bird cannot show that defendants were deliberately indifferent to any

32

risk of harm. *See* Docket 23 at 53-57. But "deliberate indifference" is the
standard for an Eighth Amendment claim, not for a RLUIPA claim. *See, e.g.*,
*Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996). Thus, in their brief in
support of their motion for summary judgment, defendants make no argument
that the fearful atmosphere Running Bird experiences does not rise to a
substantial burden on his religious exercise. *See* Docket 23 at 53-57. And
defendants make no argument for either the compelling government interest or
least restrictive means prong of the analysis. Defendants assert in their
affidavits that "[g]iven the time and space limitations already facing officials at
the SDSP, it would be difficult, if not impossible . . . to hold separate Inipi
Ceremonies or other religious activities for each of the respective housing units
at the SDSP" because doing so would "further drain already limited resources
at the SDSP." *See, e.g.*, Docket 24 ¶¶ 55-56. Such conclusory assertions do not
satisfy the "exceptionally demanding" least restrictive means standard. *Holt*,
574 U.S. at 364. Defendants' motion for summary judgment on this RLUIPA
claim is also denied.

### B. Free Exercise Claims

In analyzing a free exercise claim, courts first consider "whether the
challenged governmental action infringes upon a sincerely held religious belief,
and then apply the *Turner* factors to determine if the regulation restricting the
religious practice is reasonably related to legitimate penological objectives."
*Murphy*, 372 F.3d at 983 (cleaned up). Defendants do not argue that the
performance of ceremonial dances at family pow wows or feeling safe during

sweat ceremonies are not sincerely held religious beliefs. *See generally* Docket 23. "For purposes of summary judgment, then, [the court] will assume that" Running Bird's belief that such practices are "necessary to his faith is genuine." *Murphy*, 372 F.3d at 983.

In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. To determine a regulation's reasonableness, courts consider four factors: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," with the governmental objective being a "neutral one;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) whether there are "ready alternatives" that "fully accommodate[] the prisoner's rights at a *de minimis* cost to valid penological interests." *Id.* at 89-91 (cleaned up). The standard of review under *Turner* is "deferential" to prison administrators. *Murphy*, 372 F.3d at 984.

### 1. Family Pow Wows

For the first *Turner* factor, defendants assert that there is a valid, rational connection between restricting family pow wows to the visitor room and the legitimate governmental interests in protecting child visitors and preventing the introduction of drugs into the prison. *See* Docket 23 at 40-43. As detailed in

the court's RLUIPA analysis, both of these are legitimate governmental interests. *See Holt*, 574 U.S. at 363; *Fowler*, 534 F.3d at 939. And restricting family pow wows to the visitor room is rationally connected to such interests. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 332-34 (describing the ways that contraband can undermine security); *Overton v. Bazetta*, 539 U.S. 126, 129-30, 133 (2003) (finding that restrictions on number and manner of child visits "bear a rational relation to [the Department's] valid interests in maintaining internal security and protecting child visitors"). The "neutrality requirement" is satisfied if the governmental interest is "unrelated to the suppression of expression." *Dawson v. Scurr*, 986 F.2d 257, 261 (8th Cir. 1993) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989)). Even though there is some evidence that other groups are allowed to have religious ceremonies with outside visitors in areas other than the visitor room, Docket 26 ¶¶ 37, 40, "potential implications for prison security" make such distinctions " 'neutral' in the technical sense . . . used . . . in *Turner*." *Thornburgh*, 490 U.S. at 415-16 This factor thus supports the conclusion that the restriction is reasonable.

As to the second factor, defendants note that Running Bird has many alternative means of practicing his faith, including inmate-only pow wows that are held twice per year in the gym, spiritual conferences four times per year, pipe ceremonies, drum practice, Native American Church, and weekly sweat ceremonies. Docket 23 at 36-39. These are sufficient alternative means for Running Bird to practice his faith. *See Murphy*, 372 at 983-84 (finding sufficient alternative means even where inmate was denied all opportunities for

group worship but was allowed several opportunities for solo worship). Here, Running Bird is allowed to participate in family pow-wows, and he is allowed to participate in inmate-only pow wows in the gym. Though he is not able to have family pow wows in the gym or recreation yard, he "need not be afforded his preferred means of practicing his religion as long as he his afforded sufficient means to do so." *Id.* at 983. Thus, this factor supports the conclusion that the restriction is reasonable.

Under the third *Turner* factor, "courts should be particularly deferential to the informed discretion of corrections officials" in those circumstances where "accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff[.]" *Turner*, 482 U.S. at 90. Defendants assert that allowing family pow wows in the gym or recreation yard would "necessitate the reallocation of already limited resources[.]" Docket 27 ¶ 56; *See* Docket 23 at 43. The increased demands on prison staff necessitated by group worship activities can support a finding that a prison's regulation is reasonable, *see Murphy*, 372 F.3d at 984, even when that activity only occurs periodically. *See Goff v. Graves*, 362 F.3d 543, 547-50 (8th Cir. 2005). This factor supports a finding that the prison's restriction is reasonable.

For the final *Turner* factor, it is Running Bird's burden to show that there is a ready alternative. *See Turner*, 482 U.S. at 78 ("[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests . . . ."); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987). Because Running Bird does not identify any such

alternative, *see* Docket 32 at 9-10, this factor also weighs in favor of finding the restriction reasonable, and the court finds that the restriction of the family pow wows to the visitor room is a reasonable restriction under *Turner*. Defendants are thus granted summary judgment on this free exercise claim for injunctive relief.

### 2. Combined Sweat Ceremonies

Defendants do not argue that the combined sweat ceremonies are reasonable under *Turner*; instead, they analyze this claim under the deliberate indifference standard. *See* Docket 23 at 48-57. Although review under *Turner* is deferential, it remains defendants' burden, as the moving parties, to establish that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law on each of the claims on which they seek summary judgment. Defendants' motion for summary judgment as to this free exercise claim is thus denied.

### C. Equal Protection Claim

Running Bird also brings a claim alleging that defendants violated his Fourteenth Amendment right to equal protection by "allow[ing] other religious groups to have religious ceremonies in larger spaces, such as [the prison]'s gym, than they have allowed for Native American religious ceremonies."[8] Docket 14 ¶¶ 36-37.

---

[8] Running Bird also appears to allege an equal protection violation stemming from the lack of "safe environments for sweats." Docket 14 ¶ 36. But to allege an equal protection violation, Running Bird must allege "that he is treated differently from similarly situated inmates." *Patel*, 515 F.3d at 815-16. He

### 1. Appropriate Level of Scrutiny

Before addressing the merits of Running Bird's equal protection claim, the court must first clarify the elements of a prima facie equal protection claim in the prison context and the appropriate level of scrutiny courts apply to prison officials' actions when reviewing such a claim. In the screening order in this case, the court stated that "[t]o establish a prima facie claim of an equal protection violation, Running Bird must show (1) that he is treated differently than a similarly situated class of inmates, (2) that the different treatment burdens a fundamental right, and (3) that there is no rational relation to any legitimate penal interest." Docket 6. The court cited to *Murphy*, 372 F.3d at 984, for this proposition, and defendants likewise rely on this statement in arguing that Running Bird cannot make out an equal protection claim. Docket 23 at 64.

Upon closer examination, however, this portion of *Murphy* appears to be a misstatement of current Eighth Circuit law. For this proposition, *Murphy* cites to *Weiler v. Purkett*, 137 F.2d 1047, 1051 (8th Cir. 1998) (en banc)). But *Weiler*, which also involved an equal protection claim brought by a prisoner, stated that the "rational relation" test applies when "a law neither burdens a fundamental right nor targets a suspect class[.]" 137 F.2d at 1051 (quoting

---

makes no claims regarding whether the penitentiary provides safe environments for similarly situated inmates, or which group of inmates he alleges is a similarly situated comparator group. Thus, to the extent Running Bird is making a such claim, defendants are granted summary judgment on this claim.

*Romer v. Evans*, 517 U.S. 620, 631 (1996)). As the Eighth Circuit suggests in *Weems v. Little Rock Police Dep't.*, 453 F.3d 1010, (2006), which was decided after *Murphy*, when differential treatment of a prisoner is based on a suspect classification or fundamental right, then a higher level of scrutiny applies. *See Weems*, 453 F.3d at 1016 ("The distinctions drawn by the [ ] statute are not based on a suspect classification such as race or religion, and the statute does not implicate a 'fundamental right' under equal protection jurisprudence . . . Outside of these two categories, rationality review governs[.]" (internal citations omitted)). This appears to be in accord with other Eighth Circuit cases that address equal protection claims inside prisons. *See, e.g.*, *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) ("Because Phillips does not allege he was a member of a protected class or that a fundamental right was violated, he must show . . . 'that this difference in treatment bears no rational relation to any legitimate penal interest.' " (quoting *Weiler*, 137 F.3d at 1051)); *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993) ("Despite television's importance in modern society, appellees have no fundamental right to in-cell cable television, and wheelchair-bound inmates are not a suspect class. Accordingly, we review appellees' equal protection claim under a rational basis standard." (internal citation omitted)).

Relying on another decision by this court, defendants also argue that Running Bird must show that he was "denied a reasonable opportunity to pursue [his] faith as compared to inmates of other religions[,]" a requirement not included in *Patel*. Docket 23 at 70 (first alteration in original) (quoting

39

*Shaw v. Kaemingk*, No. 4:17-CV-04116-KES, 2020 WL 4001474 (D.S.D. July 15, 2020)); *see Patel*, 515 F.3d at 815-16. The court's equal protection analysis in *Shaw* was limited, however, because defendants were not personally involved in the conduct that formed the basis of Shaw's equal protection claim. *See* 2020 WL 4001474 at *6-7.

The requirement that inmates demonstrate they were denied a reasonable opportunity to exercise their faith as compared to inmates of other religions mirrors one of the factors from the more deferential *Turner* standard that applies to inmates' free exercise claims.[9] *See Turner*, 482 U.S. at 90 ("A second factor relevant in determining the reasonableness of a prison restriction . . . is whether there are alternative means of exercising the right that remain open to prison inmates.") Prior to *Patel*, the Eighth Circuit applied *Turner's* deferential standard, if not its four factors, to a gender-based equal protection claim. *See Klinger v. Dep't of Corr.*, 31 F.3d 727, 732 (8th Cir. 1994) ("[T]he Supreme Court's *Turner* decision counsels against holding that the plaintiffs and [other] inmates are similarly situated for purposes of prison programs and services."). Language in *Turner* certainly suggests that its deferential standard should be applied to all constitutional claims in prison

---

[9] *Shaw* cites *to Runningbird v. Weber*, 198 F. App'x 576, 578 (8th Cir. 2006) for this requirement, and *Runningbird* cites to *Thomas v. Gunter (Thomas II)*, 103 F.3d 700, 702-03 (8th Cir. 1997) for it. Although *Thomas II* does not cite to *Turner*, it relies substantially on an opinion from an earlier appeal in the same case, and this opinion, *Thomas v. Gunter (Thomas I)*, 32 F.3d 1258, 1259-61 (8th Cir. 1994), does apply *Turner*. In doing so, however, it collapses the free exercise and equal protection claims into a single *Turner* analysis. *Id.* at 1260-61.

settings. *See* 482 U.S. at 89 ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to penological interests.").

But the Supreme Court has since expressly rejected such a broad application of *Turner*. In *Johnson v. California*, 543 U.S. 499 (2005), the Court reversed the Ninth Circuit's application of *Turner* to a race-based equal protection challenge in the prison setting, explaining that *Turner* did not displace "the rule that strict scrutiny applies to all racial classifications[.]" *Id.* at 509-12. The Court limited *Turner* to only those "rights that are 'inconsistent with proper incarceration.' " *Id.* at 510 (quoting *Overton*, 539 U.S. at 131). And "[t]he right not to be discriminated against based on one's race is not susceptible to the logic of *Turner*[,]" because "[i]t is not a right that need necessarily be compromised for the sake of proper administration." *Id.*

The Supreme Court has not resolved the appropriate level of scrutiny for religious classifications in the prison context.[10] *See Murphy v. Collier*, 139 S. Ct. 1475, 1475 (2019) (Kavanaugh, J., concurring) (concurring in stay of execution where inmate claimed equal protection violation because Christian and Muslim advisors were given more access during execution than advisors of other faiths because "governmental discrimination against religion . . . violates

---

[10] The only other right the Court identified in *Johnson* as not being subject to the deferential *Turner* standard is the Eighth Amendment right to be free from cruel and unusual punishment, which is analyzed under the "deliberate indifference" standard "because the integrity of the criminal justice system depends on full compliance with the Eighth Amendment." *Johnson*, 543 U.S. at 511.

the Constitution. The government may not discriminate . . . against particular religious denominations"); *see id.* at 1482-83 (Alito, J., dissenting) (describing *Turner* as a "serious obstacle," but "not presum[ing]" that *Turner* applies). At least one Court of Appeals has interpreted *Johnson* to preclude the application of *Turner* to any suspect classification. *Hammer v. Ashcroft*, 512 F.3d 961, 968, *vacated on other grounds*, 570 F.3d 798 (7th Cir. 2009) (en banc) ("Post-*Turner*, the Supreme Court applies strict scrutiny only to prison regulations involving suspect classifications such as race."). Post-*Johnson*, the Tenth Circuit has applied strict scrutiny to an inmate's religion-based equal protection claim, and the Ninth Circuit has suggested this is the appropriate level of scrutiny. *Ashaheed v. Currington*, 7 F.4th 1236, 1251 (10th Cir. 2021); *Al Saud v. Days*, 50 F.4th 705, 711 (9th Cir. 2022). The Second and Fifth Circuits, however, continue to apply *Turner* to such claims. *Perlman*, 658 F. App'x at 608-09, 609 n.5; *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 336 (5th Cir. 2009). The Eighth Circuit has not decided whether *Turner* applies to religious classifications, but it has held that it is not applicable to claims under the Establishment Clause. *Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 426 (8th Cir. 2007); *cf. Parada v. Anoka Cnty.*, 54 F.4th, 1016, 1020 (8th Cir. 2022) (applying strict scrutiny to jail's policy of referring all foreign-born detainees to Immigration and Customs Enforcement because alienage is a suspect classification).

    The court will apply strict scrutiny to Running Bird's equal protection claim. Even before *Johnson*, the Eighth Circuit suggested in *Patel* that a

heightened level of scrutiny was appropriate for religious-based equal protection claims and it did not apply *Turner* to the equal protection claim in that case. *Patel*, 515 F.3d at 815-16 ("[T]he differential treatment is only constitutional if it is *necessary* to further legitimate penological interests." (emphasis added) (internal quotation omitted)). Like with racial discrimination, "[t]he right not to be discriminated against based on one's [religion] is not susceptible to the logic of *Turner*[,]" because "[i]t is not a right that need necessarily be compromised for the sake of proper administration." *Johnson*, 543 U.S. at 510.

The court is also not persuaded by the reasoning of the Second and Fifth Circuits that have held otherwise. The Second Circuit continues to suggest that all equal protection claims remain subject to *Turner*, which is plainly incorrect at least for race-based claims post-*Johnson*. *See Williamson v. Maciol*, 839 F. App'x 633, 636 n.2 (2d Cir. 2021) ("[O]ur cases apply this *Turner* standard 'to the assessment of equal protection claims in the prison setting.' " (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 575 (2d Cir. 1990))); *Smith*, 658 F. App'x at 609 n.5 ("Although the *Turner/Shabazz* standard was established in the context of First Amendment issues, it is also relevant to the assessment of equal protection claims in the prison setting." (cleaned up)). The Fifth Circuit continues to apply *Turner* because "not 'every religious sect or group within a prison—however few in numbers—must have identical facilities or personnel.' " *Sossamon*, 560 F.3d at 336 (quoting *Adkins v. Kaspar*, 393 F.3d 559, 566 (5th Cir. 2004)).

But applying strict scrutiny does not require prisons to supply identical facilities or personnel. To succeed on an equal protection claim, an inmate still needs to show that the differential treatment was motivated by intentional or purposeful discrimination. *See Patel*, 515 F.3d at 815-16. Thus, prisons may still provide differing facilities and services to different religious groups, they just cannot do so as part of an intentional effort to discriminate. They can also avoid liability when such differing treatment is necessary to achieve a compelling governmental interest, such as prison security. *See Fowler*, 534 F.3d at 939 ("A prison's interest in order and security is always compelling."). To summarize, to succeed on his equal protection claim, Running Bird must show that the group participating in the family pow wow receives different treatment than a group it is similarly situated to and that this differential treatment is motivated by purposeful discrimination. If he makes such a showing, defendants must then show that the differential treatment is narrowly tailored to further a compelling governmental interest.

### 2.  Similarly Situated

Running Bird alleges that the group attending the family pow wows is similarly situated to the Brothers in Blue and to the REC groups at the prison, who he alleges are allowed to host religious ceremonies in the recreation yard with outside guests. *See* Docket 23-1; Docket 23 at 64 n.8. Defendants argue that the Native American Church is not similarly situated to either of these groups because these groups are much smaller, with generally only 50-70 people attending. Docket 27 ¶¶ 30, 34-35. In contrast, because there are many

44

more inmates that belong to the Native American Church, defendants assert that if they were to allow family pow wows in the recreation yard, "the number of those requesting to attend such [an] event would well exceed [one] hundred" inmates. *Id.* ¶ 36. According to defendants, then, the attendance at REC and Brothers in Blue gatherings is "very small in comparison to the number of people who typically attend a 'family' pow wow." Docket 23 at 69.

The court agrees that the size of a religious group is a relevant factor in assessing whether two groups are similarly situated, *see Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972), but the record regarding the relative size of the groups lacks clarity. For example, in one paragraph of Mertens-Jones's affidavit, she asserts that between 60 and 70 people generally attend Brothers in Blue and REC gatherings. Docket 27 ¶ 30. In the same affidavit, however, she asserts that the estimate of 60-70 people represents the number of people that generally sign up to attend such events, but that only between 50 and 60 people actually attend.[11] Docket 27 ¶¶ 34-35.

Additionally, although defendants assert that the family pow wows "tend to be the largest events" held at the prison, they never inform the court of the actual attendance at such gatherings. *See* Docket 27 ¶ 40. Defendants claim that 100 people generally attend the inmate pow wows, Docket 26 ¶ 42, but those pow wows are not part of the government action that Running Bird is challenging. *See Klinger*, 31 F.3d at 731("[T]he similarly situated inquiry

---

[11] Unlike the family pow wows, defendants do not provide any documents substantiating either the number of people who sign up for or who in fact attend REC or Brothers in Blue events.

depends on what government action the plaintiffs are challenging[.]"). For the same reason, the hundreds of inmates at the prison that are deemed to be part of the National Council of Tribes and the LDN Spiritual Group are not the correct focus of the inquiry. *See* Docket 26 ¶ 35. The two groups that the court must compare are those that attend the family pow wows and those that attend REC or Brothers in Blue gatherings.

Defendants have provided lists titled either "Final List" or "Final Attendance List" for eight of the family pow wows that have occurred since June 2017. *See* Docket 23-3 through Docket 23-10. These lists identify between 51 and 109 individuals for the various pow wows. *See* Docket 23-3 through Docket 23-10. But because the visitor room can hold a maximum of 90 people, these lists appear to be lists of family members who have applied to attend the family pow wows, plus inmates and staff who plan to attend, not those who actually attended. *See, e.g.*, Docket 23-3 at 1 (including column with heading of "Appl. Rec'd" and noting that "[l]imit is 90 people per session. Inmates without family will be asked to leave if count is too high."); Docket 23-11 at 2 (family member application stating that "[n]o one is guaranteed entry due to the fire code limit of 90 people in the visit room"); *see* Docket 23-8 (listing individuals who applied to attend, but who were later removed at their own or at their inmate family member's request). Thus, in comparing the sizes of the two groups, the court can conclude only that, of the eight family pow wows reflected in the record, attendance could have ranged as low as less than 50 people, while never exceeding 90 people, while attendance at the Brothers in

Blue and REC gatherings ranged between 50 and 70 people. Viewing the facts in the light most favorable to Running Bird, there is a genuine dispute of material fact regarding whether the groups are similarly situated in their size.

Defendants next argue that the groups are not similarly situated because the Brothers in Blue and REC gatherings do not include outside visitors, while the family pow wows do. Docket 23 at 69-70. But as explained above, by defendants' own admissions, these gatherings "typically do not include family or friends[,]" implying that sometimes they do. *See* Docket 26 ¶ 37, 40. Thus, the court will assume for purposes of the motion for summary judgment that the family pow wow attendees are similarly situated to the REC and Brothers in Blue groups.

### 3. Based on a Suspect Classification

Running Bird alleges that the differential treatment is based on a religious classification, Docket 14 ¶¶ 36-37, and "[r]eligion is a suspect classification." *Patel*, 515 F.3d at 816. "Discriminatory purpose can be proved with various kinds of direct and circumstantial evidence but is most often proved with evidence that similarly situated inmates were treated differently." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). Here, construing facts in Running Bird's favor, similarly situated inmates have been treated differently. And this case is unlike *Patel*, where "the undisputed evidence show[ed] that the [Bureau of Prisons] consulted with religious leaders, including Muslims, and reasonably believed that it had accommodated the needs of a *halal* diet." 515 F.3d at 816. In contrast, there is nothing in the record demonstrating that

defendants made attempts to or reasonably believed they had already accommodated the need for a larger family pow wow space.

One could also infer from the inconsistencies in defendants' offered reasons that the denial of Running Bird's request to have family pow wows in the recreation yard was motivated by intentional or purposeful discrimination. Defendants claim that this decision was made "simply because the circumstances would not allow [them] to grant any such a request." Docket 23 at 69. The "circumstances" defendants appear to be referencing are the presence of visitors at the family pow wows and the relative size of the groups. But because defendants' own evidence establishes that outside visitors are at least sometimes allowed to attend other religious gatherings in the recreation yard, this explanation is not credible. *See* Docket 26 ¶¶ 37, 40. And even if the court were to accept defendants' assertions about the relative size of the groups, that would mean the prison is allowing the smaller groups to meet in the larger spaces, while forcing the much larger family pows to be held in a smaller, crowded room, all in the interest of ensuring child safety and preventing visitors from passing contraband to the inmates. Without more of an explanation from the prison, this justification strains credulity.

### 4. Strict Scrutiny

Because there is a genuine dispute of material fact regarding whether the groups are similarly situated and whether the differential treatment was motivated by intentional discrimination, to still be granted summary judgment, defendants must show that the differential treatment was narrowly tailored to

48

further a compelling governmental interest. *See Johnson*, 543 U.S. at 505. The prison's asserted interests in ensuring the safety of child visitors and preventing the introduction of contraband are compelling interests. *See, e.g.*, *Holt*, 574 U.S. at 363; *Fowler*, 534 F.3d at 939. But, as explained in the court's analysis of Running Bird's RLUIPA analysis, defendants have not shown that a total prohibition on holding family pows anywhere other than the visitor room is narrowly tailored to achieve those interests. Defendants' motion for summary judgment on Running Bird's equal protection claim for injunctive relief is denied.

### D. Substantive Due Process

Running Bird alleges that defendants "deprived [him] and other similarly situated Native American inmates of their legally protected liberty and property interests without substantive due process[.]" Docket 14 ¶ 36. Defendants move for summary judgment on this claim, arguing that the record establishes that defendants' conduct and subjective state of mind did not meet the "deliberate indifference" standard applicable to this type of claim. *See* Docket 23 at 57-63; *Terrell v. Larson*, 396 F.3d 975, 980-81 (8th Cir. 2005). Running Bird does not address his substantive due process claim in his brief responding to defendants' motion for summary judgment. *See* Docket 32. "Failure to oppose a basis for summary judgment constitutes a waiver of that argument." *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Tr.*, 558 F.3d 731, 735 (8th Cir. 2009). As the party opposing the motion for summary judgment, Running Bird must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*,

477 U.S. at 250. He has not done so on his substantive due process claim.

Defendants' motion for summary judgment on Running Bird's substantive due

process claim for injunctive relief is thus granted.

## VII.   Running Bird's Remaining Claims for Money Damages

Running Bird's remaining claims are against Mertens-Jones in her

individual capacity for money damages stemming from his free exercise, equal

protection, and substantive due process claims. Docket 14. Mertens-Jones

argues she is entitled to qualified immunity on these claims. Docket 23 at 12,

72.

### A. Legal Standard

"Qualified immunity is an immunity from suit, not a mere defense to

liability." *De La Rosa v. White*, 852 F.3d 740, 743 (8th Cir. 2017). The qualified

immunity doctrine "balances 'the need to hold public officials accountable

when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties

reasonably.' " *Duffie v. City of Lincoln*, 834 F.3d 877, 881 (8th Cir. 2016)

(quoting *Pearson*, 555 U.S. at 231). The doctrine "gives ample room for

mistaken judgments by protecting all but the plainly incompetent or those who

knowingly violate the law." *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015)

(quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

"Qualified immunity protects [government officials] from liability for civil

damages so long as their conduct does not violate clearly established

constitutional or statutory rights of which a reasonable person would have

50

known." *Garcia v. City of New Hope*, 984 F.3d 655, 663 (8th Cir. 2021) (quoting *Perry v. Woodruff Cnty. Sherriff Dep't*, 858 F.3d 1141, 1144 (8th Cir. 2017)). Under this standard, qualified immunity protects government actors "unless: (1) [they] violated a constitutional right, and (2) that constitutional right was clearly established so that a reasonable [official] would know of the right at the time of the alleged violation." *Id.* (first alteration in original) (quoting *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 982 (8th Cir. 2019)); *see also Duffie*, 834 F.3d at 882. For a right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A clearly established right does not require "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *De La Rosa*, 852 F.3d at 745 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). The court has discretion as to which step of the qualified immunity analysis to address first. *Pearson*, 555 U.S. at 236.

### B. Free Exercise Claims

Because the court has determined that Mertens-Jones did not violate Running Bird's constitutional right to free exercise by limiting the family pow wows to the visitor room, she is entitled to qualified immunity under the first prong for that claim. But the court is not granting defendants' motion for summary judgment on Running Bird's free exercise claim arising from the combined sweat ceremonies because defendants failed to make any argument under the appropriate constitutional standard. Here, *Thomas I*, 32 F.3d 1258,

is instructive. In *Thomas I*, the Eighth Circuit found that the prison's conclusory assertion that Thomas was denied access to the sweat lodge for "security-related limitations" failed the first prong of the *Turner* analysis. *Id.* at 1260. Thus, it "c[ould] not say, without reasons advanced by the [prison officials], that they acted reasonably in denying Mr. Thomas daily access to the sweat lodge for prayer." *Id.* at 1261. The court went on to conclude that "[i]n the absence of such a justification," the prison officials were not entitled to qualified immunity. *Id.* The same is true here. Without Mertens-Jones addressing the *Turner* factors, the court cannot determine whether she "perform[ed] [her] duties reasonably[,]" *Duffie*, 834 F.3d at 881 (internal quotation omitted), and thus she is not entitled to qualified immunity.

**C. Equal Protection**

Factual disputes remain regarding whether Merten-Jones violated Running Bird's right to equal protection in limiting family pow wows to the visitor room. But as described in the court's analysis of Running Bird's family pow wow free exercise claim, Running Bird was given a reasonable opportunity to purse his faith. And given that language from some Eighth Circuit cases could lead a reasonable official to believe that an equal protection claim was subject only to rational basis review and that they were only required to offer inmates a reasonable opportunity to pursue their faith as compared to other faiths, Mertens-Jones is entitled to qualified immunity under the "clearly established" prong. *See Murphy*, 372 F.3d at 984.

52

**D. Substantive Due Process**

Because Running Bird has waived any argument that defendants violated his substantive due process rights, Mertens-Jones is entitled to qualified immunity on this claim.

**CONCLUSION**

For the foregoing reasons, it is

ORDERED that defendants' motion for summary judgment is granted as to the following claims:

1. Running Bird's RLUIPA and § 1983 claims for money damages against all defendants in their official capacities;

2. Running Bird's RLUIPA claim for money damages against all defendants in their individual capacities;

3. Running Bird's RLUIPA and § 1983 claims for injunctive against all defendants in their individual capacities;

4. Running Bird's claims for money damages against Clark and Sullivan in their individual capacities;

5. Running Bird's free exercise claim for injunctive relief against all defendants in their official capacities arising out of the location of the family pow;

6. Running Bird's substantive due process claim for injunctive relief against all defendants; and

7. Running Bird's free exercise claim arising from the family pow and his equal protection and substantive due process claims for money

damages against Mertens-Jones in her individual capacity, on qualified immunity grounds.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is denied as to the following claims:

1. Running Bird's RLUIPA claims against all defendants in their official capacities for injunctive relief;

2. Running Bird's free exercise claim for injunctive relief against all defendants in their official capacities arising out of the combined sweat ceremonies;

3. Running Bird's equal protection claim against all defendants in their official capacities for injunctive relief; and

4. Running Bird's free exercise claim arising from combined sweat ceremonies against Mertens-Jones in her individual capacity.

IT IS FURTHER ORDERED that defendants' motion for protective order (Docket 19) is denied as moot.

IT IS FURTHER ORDERED that Running Bird's motion to extend the scheduling order (Docket 18) is granted. The deadlines are as follows:

1. Simultaneous expert disclosures for experts retained under Rule 26(a)(2) must be completed by May 8, 2023.

2. All discovery, including expert discovery, shall be commenced in time to be completed by September 5, 2023.

3. All motions, other than motions in limine, together with supporting briefs, must be filed and served by November 6, 2023.

54

4. All other provisions of the court's previous scheduling order remain in effect unless specifically changed herein.

DATED February 6, 2023

                            BY THE COURT:


                            /s/ *Karen E. Schreier*
                            KAREN E. SCHREIER
                            UNITED STATES DISTRICT JUDGE